**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JAY RAJA et al.,**

**Plaintiffs,**

**v.** **Case No.: 8:12-cv-02083-JDW-AEP**

**ENGLEWOOD COMMUNITY HOSPITAL, INC.,**

**Defendant.**

______________________________/

# ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss Plaintiffs' 2nd Amended Complaint (Dkt. 66), to which Plaintiffs have responded in opposition (Dkt. 75). Upon consideration, the motion (Dkt. 66) is GRANTED *in part* and DENIED *in part.*

## I. INTRODUCTION

Dr. Jay Raja is a board certified gastroenterologist who was first appointed to the medical staff at Englewood Community Hospital in 1985. He was reappointed to the medical staff each time he applied until he was denied medical staff privileges in 2011.

In 2008, Dr. Raja filed a lawsuit against ECH alleging discrimination in violation of 42 U.S.C. § 1981, among other claims. *See Raja v. Englewood Cmty. Hosp., Inc.*, Case No. 8:08-cv-2521-SDM-TGW (M.D. Fla.). While the case was pending, Dr. Raja applied for reappointment to the ECH medical staff. His application was approved and the governing board of ECH reappointed him to a two-year term on June 24, 2009. The discrimination case was ultimately dismissed in October 2009 for failing to state a claim of intentional racial discrimination. After the reappointment

and dismissal of his lawsuit, Dr. Raja alleges that he continued to suffer and report discrimination and retaliation based on his race and ethnicity.

Soon after dismissal of his discrimination suit, ECH allegedly embarked on a racially motivated, clandestine campaign to retaliate against Dr. Raja, including a "secret investigation" of Dr. Raja conducted by two members of the ECH governing board. In 2011, while this investigation was ongoing, Dr. Raja again applied for reappointment to the medical staff. The ECH Credentials Committee and the Medical Executive Committee recommended approval of his application and forwarded their recommendations to the governing board. The board, however, disregarded the recommendations, rejected the application, and denied Dr. Raja's reappointment to the medical staff. Dr. Raja alleges that the board's decision was caused, in part, by "highly racially motivated secret memos" generated during the "secret investigation," which were distributed to the board in advance of the decision on Dr. Raja's application for reappointment.

After his application was denied, Dr. Raja filed this lawsuit. The Second Amended Complaint alleges discrimination and retaliation in violation of 42 U.S.C. § 1981, as well as breach of contract for ECH's alleged failure to comply with the governing Bylaws. ECH moves to dismiss the Second Amended Complaint in its entirety.

## II. STANDARDS

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007)). Although it is axiomatic that the court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"The complaint must contain enough facts to make a claim for relief plausible on its face." *Resnick*, 693 F.3d at 1324-25. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)).

## III. DISCUSSION

### A. Counts I and II - Discrimination and Retaliation Under 42 U.S.C. § 1981.

ECH argues that Counts I and II must be dismissed because Plaintiffs fail to state a claim for discrimination or retaliation under 42 U.S.C. § 1981 for three reasons. First, ECH contends that Plaintiffs fail to allege the discrimination claim with sufficient factual detail, and as a result, the claim does not support a reasonable inference of intentional discrimination. The discrimination claim is also subject to dismissal, ECH argues, because Plaintiffs fail to allege well-pleaded facts rebutting

ECH's proffered, legitimate reasons for denying Dr. Raja's application. Finally, ECH argues that the retaliation claim must be dismissed because its underlying factual allegations are conclusory.

### *1. Plaintiffs State a Claim for Racial Discrimination.*

Section 1981 prohibits discrimination on the basis of race in the making and enforcement of contracts, including employment contracts. *Ferrill v. The Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).[1] To state a claim of race discrimination under § 1981, a plaintiff must allege "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecommc'ns.*, 372 F.3d 1250, 1270 (11th Cir. 2004).

ECH does not dispute that Dr. Raja[2] is a member of a racial minority or that the alleged discrimination concerns one of the statutorily enumerated activities. Rather, ECH contests whether Plaintiffs have sufficiently alleged the second element of a § 1981 discrimination claim: that ECH engaged in intentional racial discrimination.

Plaintiffs may allege a *prima facie* case of intentional racial discrimination through circumstantial or inferential allegations using the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Connor v. Bell Microproducts-Future Tech, Inc.*, 492 Fed. Appx. 963, 965 (11th Cir. 2012) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir.

---

[1]"All persons . . . shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined in the statute as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Subsection 1981(c) enforces the rights established by the statute "against impairment by nongovernmental discrimination and impairment under color of State law."

[2]The Second Amended Complaint does not allege a § 1981 claim on behalf of Robert Richardson. *See* Dkt. 59 ¶¶ 82, 83, 102.

1998)).[3] To establish a *prima facie* case of race discrimination using circumstantial evidence, Dr. Raja must allege (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified for the position. *Burke-Fowler*, 447 F.3d at 1323. ECH does not dispute that Dr. Raja has alleged the first, second, and fourth requirements of a *prima facie* case. ECH contests only whether Dr. Raja has alleged that similarly situated employees outside of his class were treated more favorably.

"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* "The comparator must be nearly identical to the plaintiff in order to prevent courts from second-guessing an employer's reasonable decisions." *Connor*, 492 Fed. Appx. at 965 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004)).

---

[3]Plaintiffs argue that the *McDonnell Douglas* framework should not be considered in anlyzing the sufficiency of a complaint. The Eleventh Circuit has recently minimized the importance of pleading a *prima facie* case of discrimination in line with the *McDonnell Douglas* framework. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) ("Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas prima facie* case, it must provide enough factual matter (taken as true) to suggest intentional . . . discrimination."); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 Fed. Appx. 906, 910 (11th Cir. 2013) (same). The Supreme Court progenitor in both cases, however, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), was overturned in *Twombly* and replaced by the more exacting pleading standard discussed in in *Twombly* and *Iqbal*. *See Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009) (noting that the pleading standard in *Swierkiewicz* "was explicitly overruled in *Twombly*"); *Trademotion, LLC v. Marketcliq, Inc.*, 857 F. Supp. 2d 1285, 1289 (M.D. Fla. 2012) (same).

Moreover, the contention that the *McDonnell Douglas* framework is inapplicable in the consideration of a motion to dismiss is belied by the Eleventh Circuit's treatment of appeals from grants of motions to dismiss in § 1981 and Title VII claims. *See, e.g.*, *Patel v. Ga. Dep't BHDD*, 485 Fed. Appx. 982, 983 (11th Cir. 2012); *Jackson*, 372 F.3d at 1271-72. Plaintiffs need only plead intentional discrimination, but they must do so using facts showing that the claim of intentional discrimination is "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Resnick*, 693 F.3d at 1324-25; *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This may be accomplished by pleading detailed factual allegations consistent with a *prima facie* case of intentional discrimination under the *McDonnell Douglas* framework. *See Jackson*, 372 F.3d at 1271-72.

In *Jackson*, the Eleventh Circuit upheld the dismissal of a § 1981 claim where the plaintiffs "failed to identify *any* specific nonminority employees of [the defendant] who were treated differently in other similar cases." 372 F.3d at 1274. ECH argues that *Jackson* therefore requires Plaintiffs to allege the identities of similarly situated non-minority employees with particularity. This argument extends *Jackson* too far. The *Jackson* plaintiffs failed to state a claim for discrimination because their allegations undercut the possibility that there were *any* similarly situated nonminority employees. The Eleventh Circuit held that they failed to allege "*any* facts that support so much as an inference that racial animus motivated the defendants." *Id.* at 1274. And the allegations actually suggested "quite the opposite – that race was in fact *not* a motivating factor." *Id.* Neither *Jackson*, nor any other Eleventh Circuit case, requires a § 1981 plaintiff to identify each similarly situated nonminority employee for a discrimination claim to pass muster at the motion to dismiss stage.

In contrast to the complaint in *Jackson*, the Second Amended Complaint sufficiently alleges racial animus and that ECH intended to discriminate against Dr. Raja by treating similarly situated nonminority employees more favorably than him. The Second Amended Complaint contains sufficient allegations concerning actions taken against Dr. Raja but not against similarly situated nonminority physicians to draw an inference that ECH is plausibly liable for intentional discrimination. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Resnick*, 693 F.3d at 1324-25; Dkt. 59 ¶¶ 26, 52, 54-60, 62-63, 86, 92-93, 98. Dr. Raja has therefore stated a claim for intentional discrimination under § 1981.[4]

[4]The allegations in Paragraphs 95 and 96 also give rise to an inference that ECH intended to discriminate against Dr. Raja because of his race. *See Wilson*, 376 F.3d at 1091 ("Language not amounting to direct evidence, but showing some [discriminatory] animus, may be significant evidence of pretext once a plaintiff has set out the prima facie case.") (internal quotations omitted).

### 2. *Plaintiffs Need Not Allege Facts Rebutting the Proffered Legitimate Reasons for Dismissing Dr. Raja.*

ECH next argues that Dr. Raja's discrimination claim should be dismissed because Plaintiffs fail to allege that ECH's articulated non-discriminatory basis for denying Dr. Raja's application was pretext for discrimination. This argument is unpersuasive. As noted above, Plaintiffs pleaded a *prima facie* case of discrimination. Their allegations need not rebut the non-discriminatory basis for the action proffered by ECH because consideration of the third stage of the *McDonnell Douglas* framework is more properly reserved for summary judgment. *See Jackson*, 372 F.3d at 1270 (explaining that *McDonnell Douglas* is "an *evidentiary* rather than a *pleading* standard").

### 3. *Plaintiffs Do Not State a Claim for Retaliation.*

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2410-16 (2006)); *see Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1117 (11th Cir. 2001). ECH argues that Plaintiffs fail to state a claim for retaliation because the underlying allegations of retaliation are conclusory and do not support the reasonable inference that ECH is plausibly liable for retaliation.

Plaintiffs allege that Dr. Raja engaged in two forms of statutorily protected activity. First, in 2008, he filed a discrimination lawsuit against ECH, which was dismissed in October 2009 (Dkt. 59 ¶ 20). *See Simpson v. State of Ala. Dept. of Human Resources*, 501 Fed. Appx. 951, 954 (11th Cir. 2012) (citing *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986)) (filing a discrimination complaint constitutes "protected activity"). Second, Dr. Raja "continued to report ongoing discrimination and retaliation against him based on his minority race and ethnicity" (Dkt.

59 ¶ 21). *See Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 519 (11th Cir. 2007) (reporting discrimination to a superior is "protected activity"). Plaintiffs also sufficiently allege a "materially adverse action" in the form of the denial of Dr. Raja's medical staff privileges. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) ("[T]o prove adverse employment action in a [discrimination] case . . ., an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.").

Plaintiffs do not, however, sufficiently allege a causal relationship between Dr. Raja's protected activity and the materially adverse employment action. Dr. Raja filed his discrimination suit in October 2008, but he was not denied reappointment until the summer of 2011 (Dkt. 59 ¶¶ 20, 30, 32). The time between the filing of the discrimination suit and the alleged adverse employment action is too long to support a causal relationship, and Dr. Raja does not allege any other facts suggesting a causal relationship between the suit and the denial of reappointment. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (a lapse in time beyond three to four months, in the absence of other evidence of causation, is insufficient to show close temporal proximity); *Simpson*, 501 Fed. Appx. at 954 ("Where the protected activity at issue is the filing of a discrimination lawsuit, the relevant date in determining temporal proximity of the protected activity and any materially adverse action is the *filing* of the lawsuit, not the entry of dispositive orders in the case . . . ."). Indeed, Dr. Raja was reappointed to the medical staff soon after he filed the discrimination suit (Dkt. 59 ¶ 17), which makes it implausible that ECH retaliated in response to the suit.

Because the discrimination suit cannot serve as the basis for a retaliation claim, Plaintiffs must allege a causal relationship between Dr. Raja's reports of discrimination and the denial of his reappointment to the medical staff. They have not, for two reasons.

First, Plaintiffs' allegations of complaints made by Dr. Raja are conclusory. At no point do Plaintiffs allege the nature of the complaints, the timing of the complaints, or the reaction to the complaints by ECH. Second, setting aside the conclusory allegations of retaliation (*see* Dkt. 59 ¶¶ 4, 23, 83, 91, 100),[5] Plaintiffs do not allege any facts suggesting a causal relationship between Dr. Raja's ongoing complaints of discrimination and retaliation and ECH's decision not to reappoint him to the medical staff. The only paragraph containing potentially sufficient allegations is Paragraph 62, in which Plaintiffs allege that ECH "disciplined Dr. Raja . . . because Dr. Raja made constructive criticism . . ., expressed concerns about patient care and safety, expressed dissatisfaction with policies through appropriate grievance channels, made professional comments to . . . staff, and both sought legal advice and initiated legal action for cause." While this paragraph includes a causal element, it does not connect ongoing complaints of *discrimination* and *retaliation* to the denial of reappointment. Indeed, the allegations in Paragraph 62 are vague as to the subject matter of Dr. Raja's criticism and appear to relate only to hospital polices concerning "patient care and safety." *Id.*

Without these factual details, an inference cannot be drawn that Plaintiffs' claims of retaliation are plausible, rather than merely consistent with ECH's liability, even viewing the Second Amended Complaint in the light most favorable to Plaintiffs. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *id.* ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Absent factual allegations allowing the plausible inference that ECH retaliated against Dr. Raja because of his complaints of discrimination and

---

[5]Conclusory allegations are not entitled to the presumption of truth when assessing the sufficiency of a plaintiff's allegations. *Iqbal*, 556 U.S. at 678; *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009).

retaliation, the Second Amended Complaint fails to state a cause of action for § 1981 retaliation.

**B. <u>Count III - Breach of Contract.</u>**

ECH argues that Count III must be dismissed because the claim is barred by statutory immunity under § 395.0191, *Florida Statutes*, and because Plaintiffs fail to state a claim for breach of the Bylaws.

Section 395.0191 addresses immunity from suit of parties involved in determining staff membership and clinical privileges:

> There shall be no monetary liability on the part of, and no cause of action for injunctive relief or damages shall arise against, any licensed facility, its governing board or governing board members, medical staff, or disciplinary board or against its agents, investigators, witnesses, or employees, or against any other person, for any action arising out of or related to carrying out the provisions of this section, absent intentional fraud.

§ 395.0191(7), Fla. Stat. (2012). This subsection "immunizes [any] hospital against any action for monetary or injunctive relief if it arises out of, or is related to, the appointment or reappointment process absent intentional fraud." *Lawnwood Med. Ctr., Inc. v. Desai*, 54 So. 3d 1027, 1031 (Fla. 4th DCA 2011).

Applying this analysis, the first question is whether the claim in Count III "arises out of, or is related to, the appointment or reappointment process." *Id.* Reading the complaint as a whole, it unquestionably does. For example, Paragraph 4 alleges "[t]his is a lawsuit involving ECH's denial of, and processes leading to the denial of, Dr. Raja's *medical staff privileges and reappointment to ECH's medical staff*." Dkt. 59 ¶ 4 (emphasis added). And Paragraphs 115 and 116 of Count III expressly allege that ECH violated the Bylaws "by denying Dr. Rajas' *reappointment*" (emphasis added). *Desai*'s facts are similar to those presented here and its holding is therefore binding authority representative of Florida law under Eleventh Circuit precedent. *See St. Luke's Cataract & Laser*

*Inst., P.A. v. Zurich Am. Ins. Co.*, 506 Fed. Appx. 970, 975 (11th Cir. 2013).[6]

In *Desai*, the physician held privileges at the hospital for twelve years. *Id.* at 1028. Upon applying for reappointment to the medical staff, the Medical Executive Committee recommended to the hospital's Board of Trustees that the physician be reappointed. *Id.* The Board of Trustees, however, rejected the Committee's recommendation and voted to deny the application for reappointment. *Id.* at 1029. The physician sought and obtained a preliminary injunction and the trial court reinstated his privileges pending trial. *Id.* On appeal, the Fourth District Court of Appeal reversed, holding that the immunity conferred in § 395.0191(7) barred the suit. *Id.* at 1031. The court held that § 395.0191(7) bars all actions arising out of or relating to applications for reappointment to the medical staff. Finding that the suit was related to the physician's reappointment process, the court held that the physician was required to demonstrate "intentional fraud" to overcome statutory immunity. *Id.* at 1030; *see* § 395.0191(7). Although the physician had alleged that the decision to deny reappointment was made "arbitrarily, capriciously, fraudulently, and maliciously," those allegations were not sufficient to allege intentional fraud. *Desai*, 54 So. 3d at 1031. The preliminary injunction was accordingly vacated and the case remanded with instructions that it be dismissed. *Id.*

Under *Desai*, the breach of contract claim in Count III is barred under § 395.0191(7) unless Plaintiffs plead intentional fraud. Pleading intentional fraud sufficient to avoid the statutory immunity granted to hospitals and their governing boards is a high hurdle. The "statute 'places a burden on the plaintiff to plead extrinsic evidence before authorizing a lawsuit in which such evidence could be discovered . . . .'" *Desai*, 54 So. 3d at 1030 (quoting *Dhaduvai v. Belsito*, 663 So.

---

[6]In deciding issues of Florida law, federal courts "look first to the Florida Supreme Court's decisions and, 'in the absence of definitive guidance . . . , follow relevant decisions of Florida's intermediate appellate courts." *St. Luke's Cataract & Laser Inst., P.A. v. Zurich Am. Ins. Co.*, 506 Fed. Appx. at 975, (quoting *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1231 (11th Cir. 2004)).

2d 1356, 1357 (Fla. 2d DCA 1995)). "And, like any allegation of fraud, it must be pled with particularity." *Id.* There are no allegations in the Second Amended Complaint that ECH engaged in intentional fraud. Indeed, Plaintiffs do not rely on any such allegations. Count III is therefore barred by the statutory immunity conferred by § 395.0191(7).[7]

Plaintiffs argue that § 395.0191 immunity does not apply because it is limited to cases involving "peer review" and that "peer review" is limited to evaluations handled by other members of the hospital's medical staff. More specifically, Plaintiffs argue that "qualified peer review immunity under Section 395.0191 is inapplicable," contending that the statute "only protects certain limited actions involving peer review" and that "the actions of ECH's governing Board made in connection with physician reappointment and the denial of medical staff privileges are covered expressly under another section of Chapter 395: Sections 395.0193(3) and (5)." Dkt. 75 at 8, 10.

Apparently, Plaintiffs have confused the two statutes. Section 395.0193 expressly applies to "the process of investigating and disciplining physicians pursuant to the state-mandated peer review process." § 395.0193(1). *See Awwad v. Largo Medical Center, Inc.*, 2001 WL 5006503 (M.D. Fla. Oct. 20, 2011). On the other hand, Section 395.0191 addresses "application[s] for staff membership or clinical privileges" and expressly includes within its scope the "the authority of the medical staff of a licensed facility to review for approval or disapproval all applications for appointment and reappointment . . ." § 395.0191(1) and (4).[8]

Plaintiffs cite no authority to support their contentions. And nothing in the plain language

---

[7]Because the entire breach of contract claim is barred by § 395.0191(7), the other arguments for dismissal of Count III need not be addressed.

[8] Plaintiffs' allegations concerning the lack of a peer review process relate to ECH's decision not to reappoint Dr. Raja, rather than any actions (or inactions) ECH took in a peer review proceedings (Dkt. 59 ¶¶ 69-79). More specifically, Plaintiffs complaints relate to the denial of Dr. Raja's reappointment, not an investigation and recommended "discipline" by a "peer review" committee. *See* § 395.0193(3).

of § 395.0191 limits immunity to reviews handled solely by peer physicians. Rather, the immunity provision expressly applies to the hospital's "governing board or governing board members . . . disciplinary board . . ., agents, investigators, witnesses, or employees, or against any other person." § 395.0191(7). And the Fourth District's grant of immunity to the hospital's governing board in *Desai* further discounts Plaintiffs' argument. *See* 54 So. 3d at 1030.

Plaintiffs also argue that because this case does not involve peer review, it is a simple breach of contract action for the wrongful termination of staff privileges similar to *University Community Hospital, Inc. v. Wilson*, 1 So. 3d 206 (Fla. 2d DCA 2008), and *Lawnwood Medical Center, Inc. v. Seeger*, 959 So. 2d 1222 (Fla. 1st DCA 2007), *aff'd* 990 So. 2d 503 (Fla. 2008). Those cases are inapposite, however. Neither involves the appointment or reappointment process. *Wilson* addresses the untimely termination of clinical privileges in contravention of hospital bylaws. *See Wilson*, 1 So. 3d at 212 ("UCH's troubles in this instance stem from its decision not to follow its own bylaws in *terminating* the physicians' clinical privileges."). And *Seeger* held that a special law enacted by the Florida Legislature was invalid because it impaired the contract between the hospital and the medical staff, in violation of the Florida Constitution. *Seeger*, 959 So. 2d at 1224-25.

Plaintiffs' reliance on *Lawnwood Medical Center Inc. v. Sadow*, 43 So. 3d 710 (Fla. 4th DCA 2010) is likewise unpersuasive. In *Sadow*, the plaintiff-physician alleged that the hospital breached the bylaws by granting another physician exclusive privileges for cardiovascular surgery, a decision which effectively barred the plaintiff-physician from performing surgery at the hospital, even though he had been approved by the hospital's credentialing committee. *Id.* at 712. Unlike Plaintiffs, the plaintiff-physician did not assert a claim related to the reappointment process.

Finally, Plaintiffs contend that § 395.0191 immunity does not apply because the statute does not "apply to a hospital board's actions in refusing to renew a physician's staff privileges when done

under the auspices of a secret non-peer review investigation" (Dkt. 75 at 11). This argument is semantic. Whether the board conducted a "secret non-peer review investigation" is irrelevant to the application of § 395.0191 immunity unless Plaintiffs allege that the board engaged in intentional fraud, which they do not.

As it appears that there is no set of facts Plaintiffs could allege that would state a claim for breach of contract arising from the denial of his reappointment that would overcome statutory immunity under § 395.0191, Count III is due to be dismissed with prejudice. *See Spanish Broadcasting Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc.*, 376 F.3d 1065, 1070 (11th Cir. 2004) ("The complaint should only be dismissed with prejudice if it appears beyond doubt that [the plaintiff] can prove no set of facts which would entitle it to relief.").

Accordingly,

1) Defendant's Motion to Dismiss Plaintiffs' 2nd Amended Complaint (Dkt. 66) is GRANTED *in part* and DENIED *in part*.

2) The retaliation claims of Counts I and II are DISMISSED *without prejudice*.

3) Count III is DISMISSED *with prejudice*. As Plaintiff Robert A. Richardson joined only in Count III, the Clerk is directed to ENTER FINAL JUDGMENT in favor of Defendant Englewood Community Hospital, Inc. and against Plaintiff Robert A. Richardson on Count III of the Second Amended Complaint. The Clerk is directed to TERMINATE Plaintiff Robert A. Richardson from the docket.

4) Plaintiff Jay Raja, M.D. is GRANTED leave to file a Third Amended Complaint within **fourteen (14) days** of the date of this order. If Plaintiff fails to file a Third Amended Complaint, Defendant Englewood Community Hospital, Inc. shall file an answer to the Second Amended Complaint within **twenty-eight (28) days** of the date of this order.

5) It appearing that Plaintiff Ernest Cox has been dropped as a plaintiff, the Clerk is directed to TERMINATE Plaintiff Ernest Cox from the docket.

**DONE AND ORDERED** this 5th day of August, 2013.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record